

# Service of Process Transmittal
05/05/2020
CT Log Number 537627251

| | |
|---|---|
| **TO:** | KIM LUNDY SERVICE OF PROCESS<br>WALMART INC.<br>702 SW 8TH ST<br>BENTONVILLE, AR 72716-6209 |
| **RE:** | **Process Served in Utah** |
| **FOR:** | WALMART INC.  (Domestic State: DE) |

**EXHIBIT A**

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Stevenson Jamie, etc., Pltf. vs. Walmart, Inc., etc., et al., Dfts.<br>*Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # 200500232 |
| **NATURE OF ACTION:** | Employee Litigation - Wrongful Termination |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Midvale, UT |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 05/05/2020 at 13:04 |
| **JURISDICTION SERVED :** | Utah |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 05/05/2020, Expected Purge Date: 05/10/2020<br><br>Image SOP<br><br>Email Notification,  KIM LUNDY SERVICE OF PROCESS  ctlawsuits@walmartlegal.com |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>1999 Bryan St Ste 900<br>Dallas, TX 75201-3140 |
| **For Questions:** | 877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |

Page 1 of  1 / YC

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

JUSTIN D. HEIDEMAN (USB #8897)
**HEIDEMAN & ASSOCIATES**
2696 North University Avenue, Suite 180
Provo, Utah 84604
Telephone: (801) 476-7742
Facsimile: (801) 374-1724
Email: jheideman@heidlaw.com
*Attorneys for Plaintiff Jamie Stevenson*

DATE: 5-5-2020
TIME: 1315
WHO: Michelle Fowler
BY: N Cash
LIC#: A128001

ICU Investigations, LLC   435-986-1200
250 N Red Cliffs Dr. #45-275, St George, UT 84790

### IN THE FIFTH JUDICIAL DISTRICT COURT
### IN AND FOR WASHINGTON COUNTY, STATE OF UTAH

| | |
|---|---|
| JAMIE STEVENSON, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>WALMART, INC., a Delaware Corporation, and DOES 1-5,<br><br>Defendants. | **SUMMONS**<br><br><br><br>Civil No. 200500232<br><br>Judge: Jeffrey C. Wilcox |

THE STATE OF UTAH TO:

**WALMART, INC.**
**Registered Agent: CT Corporation System**
**1108 E. South Union Avenue**
**Midvale, UT 84047**

You are hereby summoned and required to file, in writing, an Answer to the attached *Verified Complaint* with the Clerk of the Fifth District Court in and for Washington County, State of Utah, located at 206 West Tabernacle, Suite 100, St. George, Utah 84770, and to serve upon or mail to Plaintiff's attorney, at the address shown above, a copy of your Answer within twenty-one (21) days after service of this Summons and Complaint upon you.

If you fail to so answer, judgment by default will be taken against you for the relief

Page 1 of 2

demanded in the Complaint, which has been filed with the Clerk of the above Court and a copy of

which is attached and herewith served upon you.

DATED and SIGNED May 4, 2020.

                                          **HEIDEMAN & ASSOCIATES**
                                          */s/ Justin D. Heideman*
                                          JUSTIN D. HEIDEMAN
                                          Attorney for Plaintiff

JUSTIN D. HEIDEMAN (USB #8897)
**HEIDEMAN & ASSOCIATES**
2696 North University Avenue, Suite 180
Provo, Utah 84604
Telephone: (801) 476-7742
Facsimile: (801) 374-1724
Email: jheideman@heidlaw.com
*Attorneys for Plaintiff Jamie Stevenson*

## IN THE FIFTH JUDICIAL DISTRICT COURT
## IN AND FOR WASHINGTON COUNTY, STATE OF UTAH

| | |
|---|---|
| JAMIE STEVENSON, an individual, | **VERIFIED COMPLAINT** |
| Plaintiff, | |
| vs. | Civil No. |
| WALMART, INC., a Delaware Corporation; and DOES 1-5; | Judge: |
| Defendants. | Tier 2 |

COMES NOW, Plaintiff Jamie Stevenson ("Plaintiff"), by and through undersigned counsel, and hereby complains and alleges against Defendant(s) Walmart, Inc., and DOES 1-5 (Collectively "Walmart" or "Defendant") as follows:

### PARTIES

1. Plaintiff Jamie Stevenson, was, at all times relevant to this action, an individual residing in Washington County, State of Utah.

2. Defendant Walmart Inc. was at all times relevant to this action, a Delaware corporation licensed to do business in the state of Utah, with one of its principal places of business

located at store #1439, 625 West Telegraph St., Washington, Washington County, state of Utah, 84789.

3. DOES 1-5 are employees of Walmart whose names and identities are not yet known.

4. The Defendants will be referred to collectively as "Walmart."

## JURISDICTION AND VENUE

5. The Court has personal jurisdiction over Defendants in this case pursuant to Utah Code § 78B-3-205(1) and (2).

6. Jurisdiction is proper in this Court pursuant to Utah Code Ann. §78A-5-102.

7. Venue is proper in this Court pursuant to Utah Code Ann. §78B-3-307.

8. Pursuant to Utah R. Civ. P. 8(a) and 26(c)(3), damages as pled herein qualify under a Tier 2 discovery designation.

## GENERAL ALLEGATIONS

9. Plaintiff hereby incorporates and realleges all prior statements of fact and law previously stated as if fully set forth herein.

10. Plaintiff was employed by Walmart in 2001.

11. In the years following 2001 Plaintiff advanced his career through Walmart; serving as an Assistant Manager, to a Co-Manager, and finally as a Store Manager at the Saratoga Springs, Utah store known as Store Number 4438, for two years, and then at the Washington, Utah Walmart identified as Store Number 1439 ("Washington, Utah Walmart").

12. Plaintiff, during eighteen (18) years of employment with Walmart, consistently improved his performance level.

13. Plaintiff worked for eight (8) Market Managers over the course of his 18 years career.

14. Plaintiff has never been disciplined or received a Disciplinary Action ("DA") during that 18-year period; until the DA that is the subject of this complaint.

15. On or about April 22, 2019 Plaintiff met with Defendant's Market Manager, Trevor Cuff ("Mr. Cuff").

16. During the April 22, 2019 meeting, Plaintiff was given a threatening choice.

17. Specifically, Plaintiff was told he could either accept a cut in pay and be demoted to Assistant Store Manager ("ASM"); or lose Plaintiff's employment altogether.

18. The reason given to Plaintiff, by Cuff, for the decision to demote or terminate Plaintiff was that the Washington "store standards were not where they needed to be."

19. The failed standard of the Washington store was then defined.

20. Shockingly, the only specific item given was "returns were not being accomplished quickly enough on the day after Easter," a time when the store is historically busy.

21. Plaintiff, after receiving this news, requested twenty-four (24) hours to decide, after which he would communicate his response directly to Walmart.

22. During the April 22, 2019 meeting with Cuff, Plaintiff maintained there was no valid reason to terminate, or to demote Plaintiff.

23. In fact, in or about March 2019, Plaintiff had his annual job performance review, at which time there was no mention of anything that would lead to Plaintiff's termination approximately thirty days later.

24. Plaintiff also asserted that the true facts demonstrate Plaintiff made significant improvements to the Washington, Utah store since Plaintiff's arrival at the Washington, Utah store.

25. Plaintiff also pointed to store metrics that plainly demonstrate these improvements.

26. Plaintiff remains confident that he was in fact the right person to have responsibility over the management of the Washington, Utah Walmart, and the records of accomplishment show success in achieving all goals and performance objects established for Plaintiff's store while under his management.

27. Notably absent from Plaintiff's employment record is any prior ultimatum or warning regarding any part of Plaintiff's performance.

28. Moreover, prior to receiving the ultimatum, Plaintiff received nothing by way of coaching or instructions regarding any needed improvement in the high-performance culture represented by the Store Manager.

29. Such coaching and instruction is required in Plaintiff's employment contract, which is also called for in the continuing directives protocol of Walmart for its management employees.

30. Cuff did not give Plaintiff any plan of action, or tell Plaintiff what needed to be done or improved by Plaintiff.

31. Cuff asked Plaintiff to email Cuff a plan, but Cuff never addressed or follow up on the plan, nor did Cuff follow up with Plaintiff during the next two weeks leading up to his termination.

32. On May 7, 2019, both the Regional and the Divisional Walmart teams were conducting Southern Utah (Market 405) tours.

33. Despite the fact that many team members were in the area on May 7, 2019 the only Member of either Management Team that entered Store #1439 was Divisional TLE Manager Jim Brummett.

34. Plaintiff's right to the contractual protective safeguards, provided for in Walmart's protocols, had been relied upon by Plaintiff when Plaintiff entered his career employment with Walmart.

35. These safeguards are inducements Walmart uses to obtain, and retain, employees.

36. Walmart is contractually obligated to enforce and honor these safeguards to protect Plaintiff's overall work record.

37. Walmart is also obligated to enforce and honor these safeguards to protect employee retention as a matter of express contract; and further as a matter of public policy.

38. Walmart's actions toward Plaintiff violated the written, and understood, protocols set forth in Walmart's documentation and practices.

39. Walmart's conduct is a clear violation of Defendant's contractual obligations toward Plaintiff.

40. Walmart's conduct is further a clear violation of public policy.

41. Notably, the TLE Team, under the authority of Plaintiff, was given higher ratings in comparison to the other store locations in the market area during the same time periods.

42. In response to Plaintiff's ultimatum, Plaintiff asked that Walmart review his success, dedication, achievements, and entire record accumulated during his 18-year career with Walmart.

43. In response to this request, Plaintiff was referred to the Associates Relations Open Door Hotline.

44. Plaintiff contacted Associates Relations Tevin Brown ("Brown") and was informed that he had been assigned to Case #ODS0033272.

45. Brown informed Plaintiff that Brown had spoken with both Market Manager, Trevor Cuff and Human Resource Market Manager, Theresa Nielson.

46. Brown stated that there would be no further action on this due to their offer of another position (ASM), and Plaintiff's decline of that offer.

47. Plaintiff inquired as to whether Brown had reviewed the inconsistency between Plaintiff's Job Performance Disciplinary Action, which accused Plaintiff of not delivering on the level of expectations required of a Store Manager, and the Store Performance Matrix that, in contrast, reflected increases and improvements in all areas since Plaintiff accepted the responsibility of the direction of Store Manager of the Washington, Utah Walmart.

48. Brown confirmed that Brown had not done so, but that Brown was closing the inquiry regardless of that analysis.

49. On May 13, 2019, two weeks following the ultimatum, Plaintiff was officially terminated.

50. Plaintiff had been the Store Manager of the Washington, Utah Walmart for nine months, since July 2018.

51. Previously, Plaintiff had been Store Manager at the Saratoga Springs, Utah Walmart (store #4438), and had made steady improvements in achieving the standards and goals of Walmart in that location as well.

52. Specifically, during his last year at the Saratoga Springs, Utah Walmart, ending in July 2018, Plaintiff led the store to its second highest sales increase for region 54, which consists of 109 total stores, in four states.

53. Specifically the Washington, Utah Walmart (as well as other Walmart locations) uses a Clean, Fast and Friendly (CFF) record, a tracking of surveys from customers, which the company uses to determine bonus pay, job performance, and customer satisfaction at the store level.

54. When Plaintiff arrived at the Washington, Utah store, the store CFF was at 94%, which is considered below company expectations and would not allow for employees to receive bonuses.

55. Plaintiff, as Store Manager, was able to increase the CFF from 94% to at least 104%, as evidenced by the image attached hereto as Exhibit 1, which was taken on May 13, 2019, the day Plaintiff was ultimately terminated.

56. On May 21, 2019, Plaintiff used the Walmart Service Portal to use the "open door process" and submit a case, which was assigned case number ODS0033271.

57. On May 21, 2019, Plaintiff contacted Karisa Sprague, of the Associate Relations Team, seeking a Divisional Team review of his termination.

58. In response to Plaintiff's email, Elizabeth from the Associate Relations Team emailed Plaintiff and informed him that his case number was HRC0208967 and that his case manager would be reaching out to him.

59. On May 24, 2019, Plaintiff emailed Carlos Doubleday again seeking review of his termination.

60. On May 24, 2019, Plaintiff also contacted Greg Foran via email, seeking review of his termination.

61. Plaintiff also made an inquiry to Theresa Nielson seeking to obtain a copy of his personnel file, so Plaintiff could, for himself, ascertain the reasons he was disciplined.

62. On July 8, 2019, in response to Plaintiff's inquiry, Theresa Nielson, the Human Resource Market Manager, sent an email to Plaintiff indicating she had been unable to locate Plaintiff's personnel file.

63. On July 23, 2019 a letter ("July 23rd letter") was sent on behalf of Plaintiff by legal counsel to Defendant Walmart.

64. In the July 23rd letter, Walmart was given notice that Plaintiff was aware of Walmart's published practice of working with employees involving retention, advancement, and discipline.

65. The letter also addressed Plaintiff's substantial and valid concerns regarding the manner of his termination, and asked Walmart to pursue further discussion that conformed to Walmart's protocol.

66. Over an approximate 18-year period, Plaintiff has been a responsible employee of Walmart, and has risen through the ranks progressing from Assistant Manager to Co-Manager, and ultimately to Store Manager, with all the attendant responsibilities and benefits.

67. During Plaintiff's period as Store Manager, the record reflects that Plaintiff showed steady improvements in achieving the goals and standards set by Walmart.

68. Despite achieving all projected goals, Plaintiff asserts that he was not given the advantage, or timely access, necessarily required by company policy to correct and confront any issues Walmart was having with him concerning his performance.

69. Instead of offering Plaintiff the agreed upon contractual methods, and in conformance with company policy, for any behavior not up to the standards expected by Walmart, Plaintiff was told he could either accept a demotion to Assistant Manager, or face termination.

70. This was the only option ever presented to Plaintiff after receiving his first *and only* Disciplinary Action notice in 18-years of employment with Walmart.

71. The Disciplinary Action is in stark contrast to the facts.

### FIRST CAUSE OF ACTION
### (Breach of Contract)

72. Plaintiff hereby incorporates and realleges all previous paragraphs as if fully set forth herein.

73. Defendant entered an employment contract with Plaintiff for which Plaintiff was to render services.

74. The contract is typical of the large retail industry in stores commonly known as "Walmart".

75. Plaintiff has performed all obligations required of Plaintiff, per the agreement with Defendant, for a period of approximately 18 years, beginning in 2001.

76. Defendant has breached the contract, and continues to breach the contract, by failing to follow retention protocol.

77. Defendant's breach of contract is material and without justification.

78. As a direct and proximate result of Defendant's breach, Plaintiff has suffered, and continues to suffer, general damages in an amount to be proven at trial.

79. Defendant's breach has caused, and continues to cause, Plaintiff to incur special damages, consequential damages, general damages, and attorney's fees and costs.

## SECOND CAUSE OF ACTION
**(Wrongful Termination in Violation of Public Policy)**

80. Plaintiff hereby incorporates and realleges all previous paragraphs as if fully set forth herein.

81. Defendant presented to Plaintiff, at the time of hire, and as part of inducement dialogue throughout his career with Walmart, a retention program which Defendant promised was a way to assist Plaintiff, and other management similarly situated, in making sure that standards and goals for market production and sales were effectively retained at acceptable levels.

82. The agreed upon existing protocol is a step to ensure retention as a member of the managerial staff of Walmart and is a controlling component of behavior inducement.

83. To Plaintiff, the safety promised by the retention program ("RP") was a material part of his employment, was relied on by Plaintiff, and issued to Plaintiff so Plaintiff would believe the RP was "insurance" against termination without sufficient cause.

84. The RP also translated into job security, and a hedge against variables in store management that could not be controlled, such as extreme weather conditions, store interruptions in service due to emergency safety measures, and the impact on certain store resources caused as a result of a major holiday when larger than normal crowds of customers converge on the store placing a strain on assistance and accommodating returns.

85. It is a violation of the RP to base termination on a spike in customer service requirements that as a natural course, in the flow of the business, overloaded the customer service

department's abilities and for which there was no retention training offered in lieu of an "or else" mandate to settle on a lower management position or be terminated.

86. The system did not function as contracted causing Plaintiff to be wrongfully terminated without severance as even an option.

87. Recently, the Utah Supreme Court in *Graham v. Albertsons* 2020 UT 15, ¶11, footnote 3, No. 20180885, where plaintiff Graham argued that she had been terminated by Defendant, Albertson's contrary to public policy, noted by citing another case brought against Walmart, *Ray v. Wal-Mart Stores, Inc.* 2015 UT 83, ¶12, 359 P.3d 614, that an "at-will employee whose employment has been terminated in violation of a clear and substantial public policy may sue for wrongful termination."

88. Defendant Walmart failed to live up to the expectations made with what appeared to be apparent good faith promises issued for the purpose of inducing Plaintiff to rely on them for protection against arbitrary termination of an otherwise successful and capable employee.

89. Plaintiff's reliance on these promises caused him to incur special damages, incidental and consequential damages, and attorney's fees and costs to be determined at trial.

### THIRD CAUSE OF ACTION
**(Breach of Implied Covenant of Good Faith and Fair Dealing in the Alternative)**

90. Plaintiff hereby incorporates and realleges all previous paragraphs as if fully set forth herein.

91. An implied covenant of good faith and fair dealing exists in every contract under Utah Law.

92. Plaintiff had a valid binding contract with Defendant as described herein.

93. Defendant intentionally and purposely deprived Plaintiff of Plaintiff's right to receive the benefits of the contract.

94. As a result of Defendant's actions, it has become necessary for Plaintiff to prosecute these claims and Plaintiff is entitled to monetary damages to be proven at trial.

**FOURTH CAUSE OF ACTION**
**(Unjust Enrichment in the Alternative)**

95. Plaintiff hereby incorporates and realleges all previous paragraphs as if fully set forth herein.

96. Plaintiff conferred a benefit on Defendant by devoting his career against all other job possibilities for his higher level of management skills, including knowledge of the economic culture of Walmart, that expressly obligated the Plaintiff to devote a performance that extended to so many years of his life.

97. Further, Plaintiff justifiably and reasonably relied upon Defendant's promise to make sure Plaintiff continued at his level of managerial responsibilities so long as his skill level was represented by his performance and the commitment he had with the Defendant, which on the contrary offered him a demotion without a fair review, thus gaining the Plaintiff's expertise at a lower price.

98. To permit Defendant to retain the benefits received without fully compensating Plaintiff would result in an unjust enrichment to Defendant at the expense of Plaintiff.

99. Defendant was fully aware of the benefits conferred upon them by Plaintiff.

100. Plaintiff is entitled to a judgment against Defendant in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION
### (Promissory Estoppel, in the Alternative)

101. Plaintiff hereby incorporates and realleges all previous paragraphs as though set forth fully herein.

102. Defendant made certain promises to Plaintiff, that translated into job security and continued management level work as long as he performed and followed the goals set forth by the Defendant.

103. Plaintiff reasonably acted and relied upon the above promises made by Defendant, which Defendants failed to fulfill in retention practices that should have been employed.

104. In reliance on Defendants promises, Plaintiff performed long hours, operated at a high level of stress, and devoting considerable time and sacrifice.

105. To Plaintiff all indications were that Plaintiff had performed at the required level if not in excess of that required by Defendant, and without notice to the contrary was enticed by the promise of continued managerial level of employment, sensed a level of security.

106. Defendant refused to keep and maintain the level of employment promised and offered an inferior job with less pay without sufficient justification.

107. Plaintiff reliance on these promises caused him to incur special damages, incidental and consequential damages, and attorney's fees and costs.

### DEMAND FOR RELIEF

WHEREFORE, Plaintiff pray for a judgment against Defendant in an amount to be determined by the trier of fact for the following damages:

1. For special and general damages to be determined by the trier of fact;

2. For pre and post judgment interest on all special damages pursuant to Utah Law;

3. Attorney fees and costs to the extent allowed by law;

4. A severance appropriate to his time of employment including his years of dedicated service without receiving a Disciplinary Action;

5. Punitive damages if allowed by statute or common law; and

6. Other relief as the Court may deem just and equitable.

DATED this <u>April 30, 2020</u>.

> **HEIDEMAN & ASSOCIATES**
> */s/ Justin D. Heideman*
> JUSTIN D. HEIDEMAN
> *Attorney for Plaintiff*

STATE OF UTAH  )
               ) ss.
COUNTY OF UTAH )

On this <u>30</u> day of April, in the year 2020, before me <u>Samantha Fowlks</u>, a notary public, personally appeared <u>JAMIE STEVENSON</u>, who proved on the bases of satisfactory evidence to be the person whose name is subscribed to in this document, and acknowledged he executed the same.

_____
JAMIE STEVENSON

Subscribed and sworn before me this <u>30</u> day of April 2020.

Samantha Fowlks
NOTARY PUBLIC in and for
the State of Utah
My Commission expires: <u>June 9, 2023</u>

> SAMANTHA FOWLKS
> NOTARY PUBLIC • STATE OF UTAH
> My Commission Expires June 9, 2023
> COMMISSION NUMBER 705919

# Exhibit 1

